**Alvin JORDAN et al., Plaintiffs,**

**v.**

**Michael S. WOLKE et al., Defendants.**

**No. 77–C–81.**

United States District Court,
E. D. Wisconsin.

June 13, 1977.

George R. Edgar, Patricia D. McMahon and Steven H. Steinglass, Milwaukee Legal Services, Milwaukee, Wis., for plaintiffs.

Robert P. Russell, Corp. Counsel by Gerald G. Pagel, Asst. Corp. Counsel, Milwaukee, Wis., for defendants.

## DECISION and ORDER

MYRON L. GORDON, District Judge.

The six named plaintiffs in this action are incarcerated as pretrial detainees in the general population of the Milwaukee county jail. Each has been incarcerated for several months solely because of his inability to post bond pending trial. The plaintiffs claim that the policies, practices, and conditions of the Milwaukee county jail with respect to overcrowding, visitation, recreational, educational, and training facilities, and medical and dental care violate their rights under the fourteenth amendment due process and equal protection clauses of the Constitution. They seek declaratory and injunctive relief on behalf of themselves and of a proposed class consisting of:

> " . . . all pretrial detainees who are or will be incarcerated as part of the general population of the Milwaukee County Jail because of their inability to post bond pending trial."

The action is brought pursuant to 42 U.S.C. § 1983, and 28 U.S.C. §§ 1343, 2201, and 2202.

The named plaintiffs have moved for a determination that this action be maintained as a class action; the proposed plain-

tiff class is defined above. In addition, they have moved for preliminary injunctive relief regarding the visitation aspect of the complaint. The defendants, the county sheriff and the chief jailer of the Milwaukee county jail, have filed an answer. The parties have filed briefs and affidavits setting forth their positions on the pending motions.

For the reasons discussed below, I have determined that the plaintiffs' motion for an order that this action be maintained as a class action should be granted. I intend to grant their motion for preliminary injunctive relief, but it will be delayed until the court receives a report from a master, appointed herein, containing recommendations as to the precise nature and breadth of such order.

## I. CLASS ACTION

■ The named plaintiffs urge that this action be allowed to proceed as a class action, pursuant to Rule 23(b)(2), Federal Rules of Civil Procedure. Before such a class will be certified, it must be shown, under Rule 23(a), that

"(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class, . . . ."

and under Rule 23(b)(2), that

"(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole."

It is apparent that the class of pretrial detainees who are or will be incarcerated in the Milwaukee county jail is so numerous that joinder of all such individuals as named plaintiffs in this action would be impracticable. The defendants concede that the jail is used primarily as a holding facility for individuals awaiting trial or transfer to another facility following conviction. In his brief, counsel for the defendants Wolke and Littel stated (presumably regarding pretrial detainees) that in 1976 almost 88% of such detainees were released within 30 days of entry. Moreover, I have previously taken judicial notice of the fact that "the turnover of detained persons at the county jail is great." *Inmates of Milwaukee County Jail v. Petersen*, 51 F.R.D. 540, 542 (E.D. Wis. 1971). Although the defendants deny that the jail houses as many as 250 persons, I believe that the joinder of such a large and constantly changing number of pretrial detainees as named plaintiffs in this action would be impracticable.

Pursuant to Rule 23(a)(2) and (3), the plaintiffs must demonstrate that questions of law or fact are common to all proposed members and that claims or defenses have been raised which are representative of the class. The evidentiary materials and briefs filed in support of the preliminary injunction motion reveal that the Rule 23(a)(2) and (3) requirements have been satisfied as to the plaintiffs' visitation claim. All pretrial detainees are subject to substantially similar visitation policies and practices, and the constitutional claims raised by the named plaintiffs in this regard appear to be common to and representative of other potential class members.

■ The allegations of the complaint directed to overcrowding, jail programs and facilities, and medical and dental care, are disputed by the parties, and no evidentiary materials have been submitted as to these aspects of the action. I therefore find it difficult to determine at this time whether the plaintiffs will be able to satisfy the requirements of Rule 23(a)(2) and (3) with respect to these remaining claims. Since an action may be maintained as a class action as to particular issues, Rule 23(c)(4)(A), I intend at this time to certify a class of pretrial detainees in the jail's general population who are subject to the jail's visitation regulations and policies. Under the provisions of Rule 23(c)(1), the court may later

permit the amendment of this class definition on motion of a party.

The materials submitted to date also indicate that the named plaintiffs are pursuing this action vigorously and that they will adequately protect the interests of the class. Rule 23(a)(4), Federal Rules of Civil Procedure. Contrary to the defendants' position, I do not believe that the plaintiffs' apparently extended detention in the jail renders them unsuitable representatives of the class of pretrial detainees defined in this decision. As appears in part II of this decision, all such persons share certain interests which the named plaintiffs are pursuing with adequate enthusiasm in this lawsuit. It is also apparent that with respect to visitation, the defendants have "acted or refused to act on grounds generally applicable" to all pretrial detainees, thus fulfilling Rule 23(b)(2).

In the past, I declined to certify a class of persons detained at the Milwaukee county jail, on the ground, *inter alia*, that the frequent turnover of detainees would create problems in providing "reasonable notice" to class members. *Inmates of Milwaukee County Jail v. Petersen,* 51 F.R.D. 540, 542 (E.D. Wis. 1971).

Since the time of that decision, a three-judge court in this district has held that "Rule 23 itself does not require notice to the members of a (b)(2) class, since the mandatory notice provisions of Rule 23(c)(2) are by their terms inapplicable . . ." and that notice may be given at the court's discretion under the circumstances set forth in Rule 23(d)(2). *Redhail v. Zablocki,* 418 F.Supp. 1061, 1066–7 (E.D. Wis. 1976), probable jurisdiction noted, 45 L.W. 3570 (February 22, 1977). In view of *Redhail,* I believe that mailed notices to class members are not necessary at this juncture. Although I did not certify a class action in the *Inmates* case, I am persuaded by *Redhail* that a class should be certified in this case. I intend to invite the parties' views regarding notice to the plaintiff class members prior to the ultimate disposition of this action.

Finally, it has been established that this action is not moot and may still be certified as a class action, even though the named plaintiffs may already have been released from detention. *Gerstein v. Pugh,* 420 U.S. 103, 110–1 n. 11, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

For the above reasons, I will grant the plaintiffs' motion to certify this action as a class action, with a modification of the description of that class.

## II. PRELIMINARY INJUNCTION

Based on the record before me, it appears that the plaintiffs must visit with family members in one of three visiting spaces provided in every cell block of 20 detainees. These spaces are constructed so that the detainee and his visitor must stand. They are separated by a steel wall with an inserted glass pane. Voices are carried through a metal grating situated either 3½ or 5 feet from the floor. The noise emanating from the cell block makes it difficult for visits to proceed unless the parties shout to each other. This means that other detainees, visitors and jail personnel can hear conversations between a detainee and his visitors. The visiting spaces permit no physical contact between the detainee and his visitors.

The defendants have filed an affidavit of the acting lieutenant in charge of the jail. He avers that the county has approved a "master plan for jail construction", completed on or about May 1, 1977, which includes the installation of new visitation facilities in the jail. The county plans to or has installed 24 visiting booths on each of the first, third, and fifth floors of the jail. The parties to a visit will be separated by glass and will not have to shout to be heard, because the booths are equipped with power phones and soundproof construction.

The plaintiffs and the defendants dispute the terms of the jail's present visitation policy. The detainees state that the only visitation policy of which they have been informed is contained in the jail rules, to wit:

"VISITING: Visiting days are Saturdays and Sundays from 1:30 P.M. to 3:30 P.M.,

20–Min. limit. Members of the immediate family only. Children between the ages of 4 and 18 are not permitted to visit. VISITORS MUST HAVE POSITIVE IDENTIFICATION."

The lieutenant jailer's affidavit suggests that the 1977 jail rules (of which the plaintiffs say they have no notice) state this policy:

"Visiting hours are conducted on Saturday and Sunday between the hours of 1:30 p.m. and 3:30 p.m. No visiting during nonvisiting hours except with the permission of the Commanding Officer or Duty Sergeant."

Furthermore, the jailer avers that the jail plans to allow visitation during the week once the new facilities are installed.

The plaintiffs state that they have generally been allowed visits of not more than 20 minutes and only with their immediate family members. Friends and more distant relatives have been turned away. The defendants dispute this, but I believe that the instances they cite are nothing more than exceptions to the general policy as described in the plaintiffs' affidavits.

The plaintiffs seek (1) to enjoin the defendants' policy of permitting visits only by family members; (2) to expand times for visits to include weekdays and evenings; and (3) to obtain facilities that would allow contact visits, in which conversations could proceed in normal tones of voice and with greater privacy than is now provided. They claim that the present visitation situation denies them opportunities to associate with their families and friends, to discharge marital and parental obligations, and to prepare for trial or arrange posting of bond.

*Duran v. Elrod,* 542 F.2d 998, 999–1000 (7th Cir. 1976), has held:

"Strictly speaking, pre-trial detainees may not be punished at all because they have been convicted of no crime. The sole permissible interest of the state is to ensure their presence at trial. . . .

"We hold that as a matter of due process, pre-trial detainees may suffer no more restrictions than are reasonably necessary to ensure their presence at trial

. . . Since [pre-trial detainees] are convicted of no crime for which they may presently be punished, the state must justify any conditions of their confinement solely on the basis of ensuring their presence at trial. Any restriction or condition that is not reasonably related to this sole stated purpose of confinement would deprive a detainee of liberty or property without due process, in contravention of the Fourteenth Amendment."

Applying this standard to the instant motion, I find that the plaintiffs have a reasonable probability of success on the merits of their visitation claim.

The defendants have not attempted to justify any of the several limitations on visitation as necessary to ensure the presence of any plaintiff at trial. They claim that their new facilities and the 1977 visitation rule accord the plaintiffs everything to which they are entitled under the constitution. I do not agree.

█ The visitation rule which provides for exceptions to the normal weekend visiting hours, at the unbridled discretion of jail personnel, is not reasonably related to assuring the presence of detainees at trial. Jail personnel may refuse special visitation requests for any reason or no reason. Such a standardless rule is constitutionally impermissible in this context. *Mitchell v. Untreiner,* 421 F.Supp. 886 (N.D. Fla. 1976). The defendants have not justified their failure to provide for expanded visiting hours as part of the jail rules. They have not explained what proper interest, if any, is fostered by permitting only immediate family members to visit a pretrial detainee. Indeed, the named plaintiffs aver that they have been frustrated in their efforts to raise bond for their release because of the defendants' restrictive visitation policies.

The recently-installed facilities will not, on the defendants' present showing, satisfy the stringent standard enunciated in *Duran*. No reason relative to assuring the detainees' presence at trial has been forthcoming to justify the absence of contact visits which would permit a modicum of privacy.

As demonstrated in the affidavit of Andrew Basinas, former director of the bureau of institutions for this state, the visiting area at Waupun state prison, which is a maximum security facility housing inmates convicted of crimes, is an open area with tables which allows an inmate contact visits with his visitors. The defendants' dearth of proof, combined with the plaintiffs' Basinas affidavit, suggests that the showing required by *Duran* has not been made to justify the absence of contact visits, conducted in normal voice tones, for individuals who have not been convicted of the crime for which they are being detained. Expanded visiting hours, including non-family members, and contact visits have been ordered in cases like the present one. *Mitchell v. Untreiner, supra,* p. 901–2; *Rhem v. Malcolm,* 507 F.2d 333 (2d Cir. 1974).

The *Duran* case also suggests that the plaintiffs have the burden of demonstrating that "opportunities for detainees to communicate and receive visitors can be expanded without jeopardizing the security of the institutions or requiring unreasonable expenditures." *Duran v. Elrod, supra,* p. 1000. To meet this burden, the plaintiffs point to the Basinas affidavit, which in their view suggests that if expanded visiting arrangements do not present security difficulties in an institution like the Waupun state prison, there is no reason to believe that such problems would be created by expanded visitation in the county jail. They suggest that the county does not consider the installation of different visitation facilities and hours an unreasonable expense, since it has recently made such arrangements in the jail or is planning to do so. The plaintiffs' showing in this regard persuades me that it is possible to fashion a preliminary injunction which will not pose a significant threat to institutional security or require unreasonable expenditures by the jail.

I have previously commented that the plaintiffs have a reasonable probability of success on the merits of their claim of denial of visitation rights. I also find that the plaintiffs are currently being denied adequate opportunities to visit with their families and friends; that any injury which might enure to the defendants because of the granting of a preliminary injunction is not significant enough to warrant its denial; and that it is in the public interest to grant the relief sought.

I am persuaded that injunctive relief, while necessary, should not be granted until I have the benefit of a master's ·report. The latter should contain recommendations relating to the issuance of injunctive relief, giving proper consideration to the interests of the plaintiff class, the present physical plant, the costs of its alteration, if needed, and the matter of institutional security.

The master will be empowered to make personal inspections, to hold formal hearings, and to take testimony under oath. He may also conduct informal studies on the breadth of the problem and the best means of resolving it. The master will be expected to submit a written report to the court, with copies to counsel, as soon as practicable. The reasonable fees of the master and the expenses incurred by him will be ordered to be paid by the defendants. Having special confidence in the capacity of Thomas W. St. John, attorney at law, I will appoint him as master. This appointment is made pursuant to the court's general equity powers and not under Rule 53, Federal Rules of Civil Procedure.

Therefore, IT IS ORDERED that the plaintiffs' motion for an order for maintainability of a class action be and hereby is granted. Such plaintiff class shall consist of all pretrial detainees who are or will be incarcerated as part of the general population of the Milwaukee county jail because of their inability to post bond pending trial and who are subject to the jail's visitation rules and policies.

IT IS ALSO ORDERED that Thomas W. St. John be and hereby is appointed as master pursuant to the general equity powers of this court and that he proceed to inquire into and report in writing to the court on recommended methods of correcting the abuses attendant to the visitation rules and policies affecting the plaintiff class at the Milwaukee county jail.