Max **MILLER**, Plaintiff,

v.

**SCHOOL DISTRICT NUMBER 167, COOK COUNTY, ILLINOIS, et al.,**
Defendants.

**No. 71 C 1109.**

United States District Court,
N. D. Illinois, E. D.

Feb. 9, 1973.

R. W. Deffenbaugh, Drach, Terrell & Deffenbaugh, Springfield, Ill., for plaintiff.

Clark C. King, Jr., Lord, Bissell & Brook, Chicago, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

BAUER, District Judge.

This cause comes on the defendants motion to strike and dismiss the Amended Complaint.

The plaintiff, Max Miller, has been employed for two years as a full-time mathematics teacher at Brookwood Junior High School, School District Number 167, Glenwood, Illinois. The defendants are School District Number 167, in Cook County, Illinois ("School District"); the following members of the School Board of District 167: Kathleen Huck, Gene Kappel, John Dougherty, Robert Brady, Robert Leuder, Sr., Weldon Nygren, and Barton Herr, and Louis Prevost, Superintendent of Schools of School District Number 167. This is a civil rights action based on the alleged deprivation of the plaintiff's right in his dismissal from employment as a teacher in the School District. Jurisdiction is based on Title 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3). The plaintiff, in his Amended Complaint, seeks both injunctive relief and damages.

The relevant facts are as follows. In March of 1971 plaintiff was a probationary teacher under a second annual contract of employment with the School District. If the Board of Education has renewed his contract for the upcoming

1971–72 school year, plaintiff would automatically have become "tenured" by operation of Illinois law. *See,* Chapter 122 § 24–11.

. In a letter dated March 18, 1971 plaintiff was advised that the Board of Education, upon review of his performance and the recommendation of his superintendent, had decided that it was in the best interests of the district not to issue him a teaching contract for the 1971–72 school year. The letter was received within the statutory period of time for such notice of dismissal and set out the following reasons for that decision:

1. Difficulty in relating to pupils.

2. Difficulty in relating to parents.

3. Children express themselves as unable to understand your explanations and assignments.

4. Weak in the area of class control-discipline.

5. Performed personal work during class time rather than instructing pupils several times.

6. Inadequate in maintaining attention of the pupils.

7. Inadequate motivation of pupils.

8. Mastery of subject matter by class less than capability of class.

9. Improvement in above weaknesses not sufficient for an experienced teacher after two years, to place on tenure.

The plaintiff, in a letter to the Board dated March 24, 1971 requested an official closed hearing with the Board at the earliest possible date. In that letter plaintiff stated that he anticipated being represented by the local teacher's association and private counsel.

. The Board's reply letter, dated March 26, 1971 stated that it would meet with him on March 31, 1971 and explicated their purpose in holding that meeting as follows:

You are requested to limit your comments to fifteen-twenty minutes. It is not the purpose of this meeting to try the merits of the case, but only to give you an opportunity to address the Board. It is understood you may appear with counsel.

Plaintiff appeared at the March 31st meeting accompanied by his counsel, a stenographer, and a representative of the Illinois Education Association. At the meeting, plaintiff demanded that the defendants produce evidence supporting their reasons given for not renewing his contract, that he be allowed to cross-examine, and he be allowed to produce evidence on his own behalf. The School Board offered to allow plaintiff to address the Board, but refused to conduct a trial-type hearing as to the merits of the refusal to re-hire. The meeting was terminated because of this impasse.

Shortly thereafter, plaintiff filed his complaint for an injunction and damages, alleging, *inter alia,* that he had been denied procedural due process. On September, 11, 1972, plaintiff filed an Amended Complaint.

The defendants, in support of their motion to dismiss the Amended Complaint, contend:

1. Constitutional due process requirements do not apply to the determination of whether or not to continue the employment of a probationary public school teacher.

2. This District Court should abstain from deciding whether, under Illinois Revised Statutes Chapter 122 § 24–11 a probationary teacher has a property interest in continued employment.

3. An individual's mode of dress and grooming are not constitutionally protected conduct per se and thus the plaintiff fails to state the cause of action upon which relief can be granted.

4. This Court has previously ruled that the defendant School District may not be sued for damages in an action brought under Title 42 U.S.C. § 1983.

The plaintiff, in opposition to the instant motion, contends that the Amended Complaint states a claim upon which relief can be granted, and that abstention is not appropriate in this case.

It is the opinion of this Court, that given the unclear status of Illinois law

on the property interest of a probationary public school teacher in continued employment, this Court should abstain in the instant action.

■ It is well settled that the requirements for a sufficient complaint under 42 U.S.C. § 1983 are that the defendant, while acting under the color of state or local law subjected the plaintiff to a deprivation of any rights, privileges, or immunities secured by the constitution and the laws of the United States. Monroe v. Pape, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). The plaintiff based the instant civil rights action on alleged denial of due process by the School Board.

■■ The range of interests protected by procedural due process is not infinite. The requirements for procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. When protected interests are involved the right to a trial-type of prior hearing is essential. See Board of Regents v. Roth, 408 U.S. 564, 92 S. Ct. 2701, 33 L.Ed.2d 548 (1972); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1583, 29 L.Ed.2d 68 (1971); Boddie v. Connecticut, 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed. 2d 113 (1971).

Liberty and property were never intended to be rigidly defined. National Insurance Company v. Tide Water Company, 337 U.S. 582, 69 S.Ct. 1173, 93 L. Ed. 1556 (1949); M'Culloch v. State of Maryland, 17 U.S. 316, 4 Wheat 316, 4 L.Ed. 579 (1819).

*I. Interest in Liberty*

■ In a free society the definition of liberty must be broad. Stanley v. Illinois, 405 U.S. 645, 92 S.Ct. 1208, 31 L. Ed.2d 551 (1972); Bolling v. Sharpe,

347 U.S. 497, 74 S.Ct. 693, 98 L.Ed. 884 (1954). It is well settled that where a person's good name, reputation, honor or integrity are at stake because of what the government is doing to him, notice and an opportunity to be heard are essential. Wisconsin v. Constantineau, 400 U.S. 433, 91 S.Ct. 507, 27 L.Ed.2d 515 (1971); Wieman v. Updegraff, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216 (1952); Joint Anti-Fascist Refugee Committee v. McGrath, 341 U.S. 123, 71 S.Ct. 624, 95 L.Ed. 817 (1951); United States v. Lovett, 328 U.S. 303, 66 S.Ct. 1073, 90 L.Ed. 1252 (1946); Cafeteria Workers v. McElroy, 367 U.S. 886, 81 S. Ct. 1743, 6 L.Ed.2d 1230 (1961).

■■ Thus, if a public school teacher was refused re-employment in a manner reflecting on his good name, reputation, honor or integrity, due process would require an opportunity for the school teacher to clear his name. In the instant action the reasons listed by the School Board for the plaintiff's dismissal in no way suggest that he had been guilty of dishonesty or immorality. The School Board, in refusing to re-hire the plaintiff, did not make any charge against Max Miller that might seriously damage his standing in the community. There was no suggestion from the School Board's action that the plaintiff's interest in his good name, honor or integrity was at stake. Since there was no foreclosure of the plaintiff's range of future employment opportunities by the School Board's action, due process was not required.

■ It is the opinion of this Court that the School Board's action did not violate due process in relation to the plaintiff's interest in liberty. Board of Regents v. Roth, *supra*.*

---

* The plaintiff alludes to the alleged fact that the termination of his employment was caused by his exercise of his constitutional right to dress and groom himself as he chooses. The School Board has stated that the reason for his dismissal was based on his performance rather than the plaintiff's mode of dress and grooming. The plaintiff has failed to present any case law to support his contention that an employee has a constitutional right to dress and groom himself in any manner he chooses irrespective of the dictates of his employer and the needs of his job. The Supreme Court has recently stated that jury bias stemming from beards and mode of dress does not reach the level of a constitutional violation. Ham v. South Carolina, 409 U.S. 524, 93 S.Ct. 848, 35 L.Ed.2d 46 (1973).

## II. Property interest

■ Property interests protected by procedural due process extend well beyond the interests in real estate, chattels or money. Connell v. Higginbotham, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971); Bell v. Burson, *supra*; Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Courts have held that tenured public school teachers have a property interest in continued employment. Slochower v. Board of Education, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692 (1956). Additionally, public school teachers and school staff dismissed during the term of their contract have a property interest in continued employment that is safeguarded by due process. Wieman v. Updegraff, *supra*. Recently, the Supreme Court has applied the due process requirements to the property interests of a non-tenured teacher who has a clearly implied promise of continued employment. Connell v. Higginbotham, *supra*.

■ The instant action involves a question of whether an Illinois probationary public school teacher employed on a year to year contract without tenure or implied promise of continued employment has a property interest in future employment with the public school system protected by the Fourteenth Amendment. The Supreme Court, in deciding a case based on a similar fact situation, has stated that a non-tenured public school teacher's property interests in continued employment depends upon whether the school teacher has an identifiable property interest in employment under the state law. Board of Regents v. Roth, *supra*. Property interests are not created by the constitution. Rather, they are defined by existing rules or understandings that stem from an independent source such as state law.

The Illinois Code makes a substantial distinction between tenured and untenured public school teachers. A probationary teacher is employed on a year to year basis and his employment may be terminated by notice of intent not to renew, given within sixty days of the end of the term. This notice must be accompanied by a written statement of reasons for nonrenewal. *See* Chapter 122 § 24–11 of the Illinois Revised Statutes. The School Board, in the instant action, met these requirements as they applied to the plaintiff.

■ A tenured teacher, on the other hand, is on a contractual continued service until age 65, and any action to discharge him is subject to an elaborate dismissal procedure. Chapter 122 § 24–11 and 24–12, Illinois Revised Statutes. While Illinois law is clear that a tenured teacher has a property interest in continued employment, Illinois statutory and case law is unclear as to whether a non-tenured probationary teacher has a property interest in continued employment. The Illinois distinction between tenured and non-tenured teachers indicates that only the tenured public school teacher has a property interest in continued employment. Yet the Illinois legislature has granted probationary teachers a right to written reasons for nonrenewal of their contract. This protection against arbitrary and capricious dismissals might be interpreted by some as granting a probationary teacher a property interest in continued employment. Thus, Illinois law is unclear as to whether a probationary teacher has a property interest sufficient to require a hearing and the full procedural due process before re-employment for another year can be declined.

## III. Abstention

Mr. Chief Justice Burger, in his concurring opinion in *Roth*, stated:

Because the availability of the Fourteenth Amendment right to a prior administrative hearing turns in each case on the question of state law, the issue of abstention will arise in future cases contesting whether a particular teacher is entitled to a hearing

Likewise, a dismissal from employment based on a bias as to the mode of dress is not a *per se* violation of an individual's

constitutional rights or the Civil Rights Act.

prior to nonrenewal of his contract. If relevant state contract law is unclear, the federal court should in my view abstain from deciding whether he is constitutionally entitled to a prior hearing, and the teacher should be left to resort to the state courts on the question arising under state law. *Id.* 408 U.S. at 604, 92 S.Ct. at 2717.

It is the opinion of this Court that given the unclear status of Illinois law, this Court should abstain from deciding the instant civil rights action and the plaintiff should be left to resort to state courts on the question arising under state law. The management and control of public educational institutions is a sensitive area in state-federal relations, and one in which the federal courts have acknowledged the primacy of local authority. Karr v. Schmidt, 401 U.S. 1201, 91 S.Ct. 592, 27 L.Ed.2d 797 (1971); Epperson v. Arkansas, 393 U.S. 97, 89 S.Ct. 266, 21 L.Ed.2d 228 (1968). In fact, Illinois courts have held that the Illinois statute dealing with teacher tenure is significantly different from the common law and must be strictly construed in favor of the school boards. Lester v. Board of Education School District Number 119, 87 Ill.App.2d 269, 230 N.E.2d 893 (1967).

The thrust of the instant action involves the interpretation of a state statute rather than the federal constitution, a federal statute or the general common law. Such cases as the instant action are appropriate for abstention by federal counts. Lake Carriers Association v. MacMullan, 406 U.S. 498, 92 S.Ct. 1749, 32 L.Ed.2d 257 (1972); Askew v. Hargrave, 401 U.S. 476, 91 S.Ct. 856, 28 L.Ed.2d 196 (1971); Reetz v. Bozanich, 397 U.S. 82, 90 S.Ct. 788, 25 L.Ed.2d 68 (1970). More specifically, abstention is appropriate in the instant civil rights action since the question of deprivation of the plaintiff's constitutional right is dependent on a state court's determination of whether the plaintiff, a probationary public school teacher, has a property interest in his continued employment. *See* Hill v. City of El Paso, Texas, 437 F.2d 352 (5th Cir. 1971);

Alberda v. Noell, 322 F.Supp. 1379 (E. D.Mich.1971).

Accordingly, it is hereby ordered that the defendants motion to strike and dismiss the complaint is granted.